## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| YVONNE LAWRENCE BOLTON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 20-0444-MU |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Yvonne Lawrence Bolton brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 21 (order of reference)). Upon consideration of the administrative record, Plaintiff's brief, and the

Commissioner's brief,[1] the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on August 25, 2017, alleging disability beginning that same day. (*See* Doc. 15, PageID. 305-09*)*. On September 15, 2017, Bolton's application for SSI benefits was denied (*see id.,* PageID. 144-150) but it was later determined that she was eligible to apply for disability insurance benefits, which she did on September 20, 2017, alleging disability beginning on November 1, 2015 (*see id.,* PageID. Tr. 310-16); the application for DIB was then escalated to ODAR on October 30, 2017 (*see id.,* PageID. 156), along with her September 20, 2017 request for a hearing (*see id.,* PageID. 151-55). Two administrative hearings were conducted before an ALJ, first on May 23, 2019 (*id.,* PageID. 113-30) and then on September 25, 2019 (*id.,* PageID. 92-112). On October 2, 2019, the ALJ issued a decision finding that the claimant was not disabled and therefore, not entitled to social security benefits. (*Id.,* PageID. 73-86). More specifically, the ALJ determined at the fourth step of the sequential evaluation process that Bolton retains the residual functional capacity to perform medium work (*see id.,* PageID. 79-84) and at the fifth step determined that Bolton retains the residual functional capacity to perform those light and sedentary jobs identified by the vocational expert ("VE") during the administrative

---

[1]    The parties waived oral argument. (*See* Docs. 19 & 22).

[2]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

hearing (*see id.,* PageID. 85-86; *compare id. with* PageID. 106-08). On November 19,

2019, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see*

*id.,* PageID. 297); the Appeals Council denied Bolton's request for review on July 17,

2020 (*see id.,* PageID. 54-56). Thus, the hearing decision became the final decision of

the Commissioner of Social Security.

Plaintiff alleges disability due to arthritis of the hands and chronic alcoholic liver

disease.  The Administrative Law Judge (ALJ) made the following relevant findings:

**3.      The claimant has the following severe impairments: arthritis of the hands, chronic liver disease, and hypothyroidism (20 CFR 404.1520(c) and 416.920(c)).**

.      .      .

**4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.      .      .

**5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she only can lift and carry continuously up to 20 pounds, occasionally up to 50 pounds, never over 50 pounds. At one time without interruption, she can sit, stand and walk each for 2 hours. In a total 8-hour workday, she can sit, stand and walk for 4 hours each. The claimant is right handed. She can use her right hand and left hand continuously to reach overhead and to reach in all other directions. She can use both hands or either hand to occasionally handle and finger. She can use each hand or both hands continuously for feeling, pushing and pulling. She can use her left and right foot continuously for the operation of foot controls. She can never climb ladders or scaffolds. She can frequently climb stairs and ramps, balance, stoop, kneel, crouch and crawl. She can never work at unprotected heights or around moving mechanical parts. She can occasionally operate a motor vehicle. She can occasionally work where there are conditions of humidity and wetness. She can**

continuously work where there is an environment with dust, odors, fumes, and pulmonary irritants. She can occasionally work where it is extremely cold. She can frequently work where it is extremely hot. She can never work where vibrations are present.

.   .   .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

.   .   .

7.      The claimant was born on May 8, 1969 and was 46 years old, which is defined as a "younger individual, age 18-49[],["] on the alleged disability onset date. The claimant subsequently changed age category to "closely approaching advanced age" (20 CFR 404.1563 and 416.963).

8.      The claimant has a 9th grade "limited" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

.   .   .

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 15, PageID. 76, 79, 85 & 86).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert.*

---

[3]        "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Bolton asserts one reason the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence), namely, the ALJ erred in failing to give appropriate weight to the opinion of the consultative examiner, Dr. Peter Soh, while impermissibly giving more weight to the non-examining consultative physician, Dr. Michael Traurig, who responded to medical interrogatories.

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

This argument, of course, focuses on the ALJ's determination that Bolton has the residual functional capacity to perform a limited range of medium work and those light and sedentary jobs identified by the vocational expert during the administrative hearing.

As indicated above, RFC comes into play at the at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if you can adjust to other work . . . ."). In determining a claimant's RFC, which is "'that which an individual is still able to do despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503 Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357 F.3d at 1238.[5] Moreover, at the fifth step of the sequential evaluation process, the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted).

As part of the process of determining a claimant's RFC, that is, "the most [she] can still do despite" the limitations caused by her impairments, 20 C.F.R.

---

[5]     The responsibility for making the residual functional capacity determination at the fourth step of the sequential evaluation process rests with the ALJ, *see, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."), who must "'assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence' in the case." *Phillips, supra,* 357 F.3d at 1238 (alteration in the original), quoting 20 C.F.R. § 404.1520(e).

404.1545(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining physicians and, indeed, this issue is often at the forefront in social security cases.  *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c & 416.920c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency.").  "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

The ALJ analyzed the opinion evidence of one-time consultative examiner Dr.

Peter Soh and that of non-examiner Dr. Michael Traurig in the following manner:

> In the MSS form, Dr. Soh opined that the claimant can lift/carry up to 20 pounds continuously and 50 pounds occasionally; sit 1 hour at a time, up to 5 hours in a day; stand 15 minutes at a time, up to 3 hours per day; walk 20 minutes at a time, up to 1 hour per day; occasionally handle but never finger due to the arthritis reducing the range of motion; continuously operate foot controls on the right, frequently on the left; never climb ladders or scaffolds; never crawl; occasionally balance, stoop and crouch; frequently kneel; occasionally operate a motor vehicle, but never have any other environmental exposures. (Exhibit 9F).
>
> Dr. Soh's opinion is not persuasive, as it is overly restrictive in many respects. For example, the complete preclusion from fingering is not consistent with the finding of reduced flexion due to limited range of motion in the 3rd-5th fingers, but otherwise 5/5 hand extension and 5/5 strength on abduction and adduction in all fingers bilaterally. The undersigned has limited the claimant to occasional fingering, but these exam findings do not support complete preclusion. Dr. Soh also said the claimant cannot perform activities like shopping, walking a block, or climbing a few stairs. These findings appear to be based at least in part on the claimant's subjective complaints. The physical exam findings, aside from some reduced soft touch and vibration in the left foot, were normal in terms of strength, range of motion and sensation. The undersigned has precluded the claimant from exposure to vibration in the residual functional capacity, which can account for this physical exam finding.
>
> The undersigned finds Dr. Traurig's opinion persuasive, as he had the opportunity to review the entire file, including Dr. Soh's consultative exam report. Dr. Traurig is well qualified to evaluate the claimant's impairments and form conclusions regarding her symptoms, conditions, and resulting limitations. The undersigned generally followed his MSS opinions in formulating the residual functional capacity to the extent they are consistent with and supported by [] substantial evidence. For example, Dr. Traurig limited the claimant to occasional handling and fingering based on arthritis in her hands. He indicated she could sit or walk/stand 2 hours at a time and up to 4 hours in a day. He also noted her osteoarthritis and low platelets, which caused a bleed risk if she falls, in explaining the complete preclusion from climbing ladders or scaffolds, as well as being exposed to unprotected heights, moving mechanical parts, and vibrations.

(Doc. 15, PageID. 84).

This Court would be remiss in failing to start off its analysis by recognizing that the ALJ did not find Dr. Soh's RFC opinions wholly unpersuasive, that is, wholly inconsistent with and unsupported by the record evidence. Indeed, the RFC determination by the ALJ "tracks" Dr. Soh's RFC findings in several respects, including with regard to Bolton's ability to lift and carry weight; her ability to use her hands to reach, handle, feel, push and pull; her ability to climb ladders and scaffolds, work around unprotected heights and moving mechanical parts; her ability to operate a motor vehicle; and her ability to work where vibrations are present. (*Compare* Doc. 15, PageID. 79 ("**[C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she only can lift and carry continuously up to 20 pounds, occasionally up to 50 pounds, never over 50 pounds. . . . The claimant is right handed. She can use her right hand and left hand continuously to reach overhead and to reach in all other directions. She can use both hands or either hand to occasionally handle . . . . She can use each hand or both hands continuously for feeling, pushing and pulling. . . . . She can never climb ladders or scaffolds. . . . She can never work at unprotected heights or around moving mechanical parts. She can occasionally operate a motor vehicle. . . . She can never work where vibrations are present.")** *with id,* PageID. 561 & 563-65 (June 30, 2019 RFC findings by Dr. Peter Soh that "match" the ALJ's RFC findings)). Therefore, to the extent Plaintiff means to suggest that the ALJ relied solely on Dr. Traurig's RFC assessment, to the exclusion of Dr. Soh's assessment, in reaching his RFC determination, the Plaintiff would be mistaken in light of the significant overlap between the ALJ's RFC determination and Dr. Soh's RFC assessment. Nevertheless, it

is clear that the ALJ did not find Dr. Soh's opinion persuasive in all respects and, indeed, specifically observed that it was "overly restrictive in many respects." (Doc. 15, PageID. 84). Most crucial, the ALJ found Dr. Soh's opinion unpersuasive to the extent it found that Plaintiff could "never" finger. (*Compare id. with id.,* PageID. 563). Even if the ALJ made a mistake on his "fingering" analysis (in terms of ROM, adduction and adduction), it does appear to this Court that the "never" noted by Dr. Soh was influenced at least in part by Plaintiff's subjective comments (*see id.*, PageID. 556 ("Claimant . . . [states she] has difficulty picking up small objects. Claimant states she has to scoop up small objects with dust pan because [she] can't grasp with fingers.")), particularly given that Soh's own observations are contrary to Plaintiff's statements and his (the physician's) own RFC assessment of no fingering as Bolton successfully picked up a safety pin from the bedside during the medical examination (*id.,* PageID. 558).[6] In light

---

[6]      Dr. Soh's stand/walk findings—particularly his findings that Bolton can stand only 20 minutes at one time without interruption and walk 15 minutes at one time without interruption (Doc. 15, PageID. 562)—were clearly informed by Bolton's subjective complaints (*compare id. with id.,* PageID. 555 & 556 ("Claimant also complains of back pain that is diffuse throughout neck, back, and low back. . . . The claimant does not use an assistive device. The claimant reported some difficulty to bathe[.] . . . Claimant can do simple chores such as sweeping or vacuuming but with pain. . . . Difficulty with grocery shopping due to pain in legs, back, and neck.")) and were properly discounted by the ALJ because Dr. Soh did not identify any medical or clinical findings supportive of the aforementioned stand/walk limitations (*see id.,* PageID. 562), and nothing about Dr. Soh's objective findings (*see id.,* PageID. 557 & 558 ("There is no neck spasm, no thyromegaly, no jugular venous distention, no masses. . . . Claimant has a normal gait and does not use any assistive device. There is no evidence of ataxia or spasticity. Claimant can get on and off the examination table with ease. The claimant can walk on [] her toes, heels with little difficulty. The claimant can squat and rise. . . . Cervical spine shows full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. There is no scoliosis, kyphosis, or abnormality of the thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. Straight leg raises negative, bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally.")) or the remaining evidence of record (*see, e.g., id,* PageID. 408 (on physical examination performed at an ER on May 2, 2017, Plaintiff's neck was supple and her musculoskeletal exam produced normal strength and range of motion, with no swelling or tenderness); 482-83 (after presentation to an ER on July 28, 2017, musculoskeletal (Continued)

of the fact that "'[f]ingering involves picking, pinching, or otherwise working primarily with the fingers[,]'" *Douglas v. Commissioner, Social Sec. Admin.,* 832 Fed.Appx. 650, 655 (11th Cir. Oct. 28, 2020), quoting SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (1985); *see also Moore v. Astrue,* 256 Fed.Appx. 330, 332 (11th Cir. Nov. 29, 2007) ("'Fingering' means having the ability to pick or pinch."), and Dr. Soh specifically observed Bolton picking up a safety pin,[7] it is utterly reasonable for the ALJ to have accepted Dr. Traurig's assessed limitation of "occasional" fingering instead of Dr. Soh's assessment of no fingering. In other words, substantial evidence supports the assessment of "occasional fingering," as found by the ALJ and Dr. Traurig, inclusive of Dr. Soh's own observation that Bolton could pick up a safety pin. It cannot be overlooked that "occasional" fingering is quite limiting itself and means occurring from very little to up to 1/3 of the time (*see, e.g.,* Doc. 15, PageID. 561 (defining

---

exam revealed normal strength and range of motion, with no swelling or tenderness; as well, the neck was supple); 504 (at an August 5, 2016 encounter at Mostellar Medical, musculoskeletal exam revealed normal ROM, no peripheral edema, and no pain or tenderness); 509 (at an April 20, 2017 encounter at Mostellar Medical, musculoskeletal exam revealed normal ROM and no peripheral edema); 512  (at an August 18, 2017 encounter at Mostellar Medical, musculoskeletal exam revealed normal ROM and no peripheral edema); 520 (at a November 21, 2017 encounter at Mostellar Medical, musculoskeletal exam revealed normal ROM and no peripheral edema); 523 (at a February 22, 2018 encounter at Mostellar Medical, musculoskeletal exam revealed normal ROM and no peripheral edema); & 528 (during an ER visit to Providence Hospital on January 10, 2019, Bolton was noted to be in no acute distress and musculoskeletal exam revealed normal ROM)) support these limitations. Accordingly, the ALJ did not err in finding, consistent with the findings of Dr. Traurig, that Bolton can sit, stand and walk 2 hours each at one time without interruption and a total of 4 hours each in an 8-hour workday (*compare id. with id.,* PageID. 600 (Dr. Traurig's sit/walk/stand limitations)).

[7]     Interestingly, Dr. Soh also observed that Plaintiff could prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, or use paper/files. (Doc. 15, PageID. 566). It is impossible for this Court to believe that none of these daily activities require fingering; indeed, the contrary is believable, that all of these activities require some fingering. This is but additional evidence supporting Dr. Traurig's RFC finding that Bolton is capable of "occasional" fingering.

"OCCASIONALLY" to mean "very little to one-third of the time.")) and is certainly reasonable in light of Dr. Soh's observation during his examination of Bolton.

Besides, even if the ALJ's RFC and the hypothetical posed to the VE were somewhat incomplete, in that neither recognized a restriction to "no fingering," any such error was harmless. This is because the inclusion of a "no fingering" limitation would not have changed the outcome of this case. The DOT description of surveillance-system monitor reflects that this job does not require any fingering (nor, indeed, does it require any reaching, handling, or feeling). *See* DOT 379.367-010. And the VE specifically testified in this case that 141,000 surveillance-system monitor jobs exist in the national economy (Doc. 15, PageID. 108) and would exist even where an individual could perform no fingering (*see id.,* PageID. 111).[8] For its part, the Eleventh Circuit has held that a significant number of jobs exist where the VE identified 80,000 jobs nationwide. *Allen v. Bowen,* 816 F.2d 600, 602 (11th Cir. 1987); *see also Wooten v. Commissioner of Social Sec.,* 787 Fed.Appx. 671, 675 (11th Cir. Oct. 11, 2019) (per curiam) (235,000 jobs nationally constitute a significant number of jobs); *Atha v. Commissioner, Social Sec. Admin.,* 616 Fed.Appx. 931, 935 (11th Cir. June 2015) (23,800 jobs nationally

---

[8]     Indeed, the VE testified that the job of surveillance-system monitor would exist assuming the hypothetical individual could sit for five hours in an 8-hour workday and stand/walk for a total of 3 hours in an 8-hour workday (*see id.,* PageID. 110-11), which limitations are consistent with the sitting, standing and walking limitations found by Dr. Soh (*compare id. with id.,* PageID. 562). Moreover, the environmental conditions to which Dr. Soh found Plaintiff should not be exposed (*see* Doc. 15, PageID. 565) are not present with respect to the surveillance-system monitor job, *see* DOT 379.367-010, nor does that job require any stooping or crouching, *see id.*. Thus, there can be no question but that accepting Dr. Soh's limitations, the ALJ's fifth-step determination necessarily stands because Bolton can perform work as a surveillance-system monitor, a job which exists in significant numbers in the national economy.

constitute a significant number). Thus, even assuming Plaintiff could only perform this one job, there are a sufficient number of surveillance-system monitor jobs in the national economy to support the ALJ's fifth-step determination denying Plaintiff benefits. *See Wooten, supra,* 781 Fed.Appx. at 674-75 (determining that even if the ALJ erred in relying on VE testimony that conflicted with the DOT in concluding claimant could perform the jobs of surveillance system monitor and document preparer "that error would be harmless" because the uncontradicted testimony of the VE provided the ALJ with substantial evidence to support the conclusion that Plaintiff could perform the job of final assembler, which exists in significant numbers—235,000—in the national economy).

In light of the foregoing and because Plaintiff raises no other issues, the Commissioner's fifth-step determination denying benefits  is due to be affirmed.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income be affirmed.

**DONE** and **ORDERED** this the 12th day of August, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

14